No. 13,067.

DRINKGERN ET AL. *v*. PEOPLE.
(35 P. [2d] 1012)

Decided September 10, 1934.

Mr. HARRY S. CLASS, for plaintiffs in error.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. E. J. PLUNKETT, Assistant, Mr. PAUL P. PROSSER, Attorney General, Mr. CHARLES H. QUEARY, Assistant, for the people.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

WE are asked to review and reverse criminal convictions which were obtained against the plaintiffs in error Drinkgern and Schnell under the banking code of Colorado.

As defendants below, they were tried, found guilty,

and sentenced to the penitentiary on the first count of an information, which charged that Drinkgern, as president and director of the Farmers State Bank, and Schnell, as cashier and director thereof, feloniously made and filed with the state bank commissioner a written report falsely stating, with knowledge of the falsity, that the total resources of the bank on March 4, 1930, amounted to $562,-264.94, and that those resources then included "other bonds and securities" in the sum of $28,270.86, and that the actual market value of the latter was then $28,270.86, and, under the title "other bonds and securities," that certain Brighton Improvement Company bonds were then of the market value of $11,000, and that the surplus fund of the bank was then $15,000. The information then affirmatively charged that said Brighton Improvement Company bonds had no market value on the date mentioned, and that the foregoing allegedly false figures exceeded the true figures by $11,000. It was also charged that the statements were made for the purpose and with the felonious intent to deceive and injure the state bank commissioner "and other person or persons to the district attorney unknown."

The second count of the information was voluntarily dismissed by the district attorney. It had charged that, for the purpose of similarly deceiving, the defendants Drinkgern and Schnell as officers and directors of the bank wilfully, unlawfully and feloniously omitted and failed to make, in the written report referred to in the first count, "certain statements and entries in said report, in the following particulars, to-wit: that said Brighton Improvement Company bonds were second issue and second mortgage bonds, which said statements were omitted in said report, and which said statements on the part of and by the said E. H. Drinkgern and A. H. Schnell, should have been so made to appear in said report and statement of said bank, in order to truly reflect the affairs, financial condition and property of said Farmers State Bank at the close of business on the 4th day of

March, A. D. 1930, said bonds being then and there second mortgage and second issue bonds, and worthless, and in no way distinguished in said report from valuable Brighton Improvement Co., First Mortgage, First Issue Bonds.''

Neither the statutes nor the report blank prepared by the commissioner required such information as the second count had charged the defendants with omitting. That count was therefore properly dismissed by the district attorney.

In passing, we may mention the fact that the bonds of the second issue, as compared with those of the first, were of a radically different color, were appreciably larger in size, and plainly stated the date of their issue to be April 1, 1926. This date was more than eight years after the date of 1917 borne by the first issue bonds, of which the commissioner had full knowledge. Moreover, there was no similarity between the respective maturity dates.

Obviously the first count, on which the convictions rest, depends wholly upon the alleged falsity of the statement as to the market value of the Brighton Improvement Company bonds. The evidence is clear that there was no misrepresentation whatever as to whether the bonds belonged to a first or a second issue or were secured by a first mortgage or a second mortgage; nor is such a question relevant or material under the first count.

In 1926 the state bank commissioner, in the ordinary process of official regulation, had found fault with some of the bank's paper and insisted upon a substitution of something more substantial. He had finally ordered the directors to levy a stockholders' assessment of fifty per cent payable April 15, 1926, and fifty per cent payable October 15, 1926. As is sometimes done by banks in order to avoid the embarrassment that comes with knowledge or notice of a formal bank assesment and with the inferences drawn therefrom by the public, the directors of the Farmers State Bank undertook to accomplish the re-

quired increase of solvency by eliminating assets that were unsatisfactory to the commissioner and making provision for a sufficient substitution without actually levying a formal assessment upon the stockholders, such deviation being, as the record shows, a procedure tolerated by the banking department. In connection with this self-imposed task, those interested in the bank deemed it desirable to, and did, procure a $25,000 bond issue to be authorized by the Brighton Improvement Company, secured by a second mortgage on the company's property. We shall revert to this later on.

The banking code of Colorado (C. L. 1921, §§2705 to 2743, inclusive, as amended by S. L. 1927, chapter 65) affords a drastic, comprehensive and practical means of supervising and regulating the affairs of banks operating under the state law. The evident purpose of requiring reports to be made at frequent intervals is to supply concrete data that will enable the commissioner to check up on the structural set-up of a bank, its assets, its liabilities, and, in general, its business methods and integrity. In the report upon which the prosecution herein was based, twenty-two Brighton Improvement Company bonds were listed, among "other bonds and securities." The par or face value of each bond was given as $500. Their total book value and their total market value were each given as $11,000, the same as par. These were the bonds alleged in the information to be wholly valueless.

Attempting to prove the falsity of the statement as to market value, the district attorney went far afield, and the trial court admitted a mass of hearsay and much testimony that was only remotely if at all relevant.

From the evidence introduced by the people, as well as from the evidence introduced on behalf of the defendants, it is certain that no misrepresentation of fact, no false statement, was made in relation to the Brighton Improvement Company bonds unless it were on this matter of market value. In 1926, immediately after the commissioner demanded the strengthening of the

bank, as already mentioned, the Brighton Improvement Company duly provided for the aforesaid issue of additional bonds in a sum not to exceed $25,000, and for a second mortgage as security therefor. Some or all of the twenty-two bonds mentioned in the report of March, 1930, belonged to the later issue. The evidence for both the people and the defendants shows affirmatively that in the case of every sale actually made of a bond belonging to the second series the transaction was at par and for full value. It is also shown that the bonds in question were exchanged for cash or for notes which were duly paid in full. Bonds of the second series were bought and sold over the bank's counter at par. Neither the purchaser of any of these bonds nor the bank itself is shown to have suffered any loss or to be complaining. There is no competent evidence to support the allegation in the information that these bonds were without value. The conviction of each of the two defendants here is thus rooted in a mere opinion given by them in the usual course as to the value of a security physically subjected at all times to the official inspection of the commissioner and his deputies. No information was requested or given that would be definite enough, in the circumstances, to overcome the prima facie showing of truthfulness. In fact, under the evidence, there was no reasonable ground for doubting that opinion. Long before the bank was taken over, the defendants and the other directors admittedly paid out of their own pockets the full face value price of the bonds and so made good on their valuation and opinion. It stands uncontradicted that they were all financially responsible at the period involved. We therefore cannot say, nor is it possible to infer from the record, that the bank officers' opinion of value was of such a nature as, contrary to the general rule, could be deemed a misrepresentation of fact. The only market value in evidence is that corresponding to par, which, as we have already stated, was the invariable basis whereon all known transactions of selling or buying the bonds occurred.

For the reasons given, the judgment of conviction must be set aside as to each defendant, and a new trial granted. Judgment reversed.

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE ADAMS, who does not participate.